IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIFEMD, INC., JUSTIN SCHREIBER and STEFAN GALLUPPI | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION |
| CHRISTIAN MATTHEW LAMARCO, SHADYSIDE PARTNERS, LLC d/b/a CULPER RESEARCH and JOHN/JANE DOES 2-10 | : : : : | NO. 2:21-cv-01273-WSS |
| Defendants. | : : : | Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CHRISTIAN MATTHEW LAMARCO AND SHADYSIDE PARTNERS, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

STATEMENT OF FACTS .................................................................................................. 4

ARGUMENT ................................................................................................................... 6

I.    New York Law Applies ........................................................................................ 6

II.   Plaintiffs Failed to Plead Actionable Defamation. ................................................ 7

    A.    The Challenged Statements are Statements Opinion Are Not Actionable. ............ 7

        1.    The Article's Context Signaled To The Reader it Was Opinion ............ 9

        2.    The Specific Challenged Statements Are Protected Opinion Because They Disclosed The Sources On Which the Opinions Were Based. ..... 11

    B.    Plaintiffs, Pubic Figures, Failed To Plead Actual Malice. ................................... 17

    C.    Plaintiffs Fail To Plead Special Damages ........................................................... 18

III.  Plaintiffs' Non-Defamation Claims Must Be Dismissed ................................... 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*,
    80 N.Y.2d 130, 139 (1992))....................................................................................7

*Accenture Global Services GMBH v. Guidewire Software, Inc.*,
    581 F. Supp. 2d 654 (D. Del. Oct. 8, 2008) ............................................................20

*Alcor Life Extension Found. v. Johnson*,
    2014 N.Y. Slip Op. 50784(U), (Sup. Ct., N.Y. County May 1, 2014) ....................17

*Anyanwu v. Columbia Broad. Sys., Inc.*,
    887 F. Supp. 690 (S.D.N.Y. 1995) ..........................................................................19

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
    151 F. Supp. 3d 287 (E.D.N.Y. 2015) ...............................................................9, 11

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)...............................................................................17, 18

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015)............18

*Brian v Richardson*,
    87 N.Y.2d 46 (1995) ........................................................................................7, 8, 11

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014) ................................................................................................8

*Dillon v. City of New York*,
    261 A.D.2d 34 (1st Dep't 1999) ................................................................................7

*Drug Research Corp. v. Curtis Pub. Co.*,
    7 N.Y.2d 435 (1960) ................................................................................................19

*Egiazaryan v. Zalmayev*,
    880 F. Supp. 2d 494 (S.D.N.Y. 2012)................................................................9, 18

*Eros Int'l, PLC v. Mangrove Partners*,
    191 A.D.3d 465 (1st Dep't 2021) ........................................................................9, 10

*Eros Intern. PLC v. Mangrove Partners*,
    2019 WL 1129196 (N.Y. Sup. Mar. 8, 2019) ...........................................................9

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)..................................................................20

*Farb v. Baldwin Union Free School District*,
    2006 WL 8439500 (E.D.N.Y. Mar. 3, 2006)........................................................7

*Faulkner v. City of Yonkers*,
    105 A.D.3d 899 (2d Dept. 2013) ........................................................................20

*Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.*,
    61 Misc. 2d 226 (Sup. Ct., Queens County 1969) ..............................................17

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
    267 F. Supp. 2d 425 (E.D. Pa. 2003) ...................................................................6

*Gross v. New York Times Co.*,
    82 N.Y.2d 146 (1993) ...........................................................................................7

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003)................................................................20

*Howell v. New York Post Co., Inc.*,
    81 N.Y.2d 115 (1993) .........................................................................................20

*Immuno AG. v Moor-Jankowski*,
    77 N.Y.2d 235, 254 (1991) ...................................................................................8

*Jain v. SIFMA*,
    2009 WL 3166684 (S.D.N.Y. Sept. 28, 2009) ...................................................19

*Jebran v. LaSalle Bus. Credit, LLC*,
    33 A.D. 3d 424 (1st Dep't 2006) ........................................................................20

*Kirby v. Wildenstein*,
    784 F. Supp. 1112 (S.D.N.Y. 1992)....................................................................19

*Kraus Indus., Inc. v. Moore*,
    2007 WL 2744194 (W.D. Pa. Sept. 18, 2007) .....................................................7

*McCullough v. Advest, Inc.*,
    754 Fed. App'x 109 (3d Cir. 2018)......................................................................5

*MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*,
    2018 WL 4735717 (S.D.N.Y. 2018)............................................................17, 18

*Mzamane v. Winfrey*,
    693 F. Supp. 2d 442 (E.D. Pa. 2010) ...................................................................7

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
    813 F. Supp. 2d 489 (S.D.N.Y. 2011) ...................................................................19

*Reliance Ins. Co. v. Barron's,*
    442 F. Supp. 1341 (S.D.N.Y. 1977) .....................................................................17

*Sabratek Corp. v. Keyser,*
    2000 WL 423529 (S.D.N.Y. Apr. 19, 2000 ) .......................................................10

*Sandals Resorts Int'l Ltd. v. Google,*
    86 A.D.3d 32 (1st Dep't 2011) ............................................................................11

*Sandler v. Simoes,*
    609 F. Supp. 2d 293 (E.D.N.Y. 2009*)* ...............................................................19

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC,*
    959 N.Y.S.2d 92 (N.Y. Sup. Aug. 16, 2012) ..............................................9, 10, 20

*Solmetex, LLC. v. Dental Recycling of N. Am., Inc.,*
    2017 WL 2840282 (S.D.N.Y. June 26, 2017) .....................................................19

*Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.,*
    2021 WL 665031 (S.D.N.Y. Feb. 19, 2021) ........................................................20

*Steinhilber v. Alphonse,*
    68 N.Y.2d 283 (1986) ..................................................................................7, 8, 11

*Trepel v. Hodgins,*
    183 A.D.3d 429 (1st Dep't 2020) .........................................................................19

*Vitro S.A.B. de C. V. v. Aurelius Capital Mgmt, L.P.,*
    99 A.D.3d 564 (1st Dep't 2012) .........................................................................19

*Wexler v. Dorsey & Whitney, LLP,*
    2019 WL 5485265 (E.D.N.Y. Oct. 25, 2019) .......................................................8

*Wilson v. Slatalla,*
    970 F. Supp. 405 (E.D. Pa. 1997) .........................................................................6

*Winklevoss v. Steinberg,*
    170 A.D.3d 618 (2019) ........................................................................................17

*Yangtze River Port and Logistics Ltd. v. Hindenburg Research,*
    2020 WL 905770 (N.Y. Sup. Feb. 25, 2020) .................................................10, 11

**Statutes**

Delaware's Unfair Trade Practices Act .............................................................................20

Plaintiffs—LifeMD, Inc., a publicly-traded company, and Justin Schreiber and Stefan Galluppi (two LifeMD executives)—filed this lawsuit in a blatant attempt to quiet any and all critical opinions about LifeMD and its business practices.  Their targets are Defendants Shadyside Partners, LLC d/b/a Culper Research and Christian Matthew Lamarco (collectively, "**Culper**").  Culper Research published an article on the Internet on April 14, 2021 (the "**Article**"), in which it expressed its negative opinions about LifeMD based upon well-documented and clearly cited sources that were either linked to or embedded within the Article itself.  Rather than focusing on addressing the concerns in the Article—or focusing on why LifeMD's share price had been in regular, substantial decline for months *before* the Article was published—Plaintiffs brought this suit to try to quash Culper's voice and trample on Culper's constitutionally protected freedom to voice its opinions.  The Article may have been critical, but that does not make it defamatory.

This is not Plaintiffs' first attempt to stifle Culper's opinions about LifeMD.  Plaintiffs brought a nearly identical lawsuit in this Court on May 13, 2021, naming exactly the same parties and alleging the same wrongdoing (the "**Prior Federal Action**" or "**PFA**").  *See* 2:21-cv-00640-WSS.  After Defendants moved to dismiss the Complaint, and after that motion was fully briefed, Plaintiffs suddenly voluntarily dismissed the case, claiming that "Plaintiffs intend to pursue their claims against additional defendants whose joinder here would divest this Court of jurisdiction." (PFA Dkt. #25.)  *But that did not materialize.*  Instead, Plaintiffs refiled a substantially similar action in Pennsylvania state court and named Shadyside Partners (the official corporate name) instead of Culper Research (the "d/b/a").  But this one change to the formal names of the parties *did not*, as Plaintiffs told this Court, defeat diversity.  Shadyside is an LLC; thus its citizenship for purposes of diversity is the citizenship of its members.  Plaintiffs plainly allege that the only

member of Shadyside is Lamarco—a Pennsylvania resident.   As none of the Plaintiffs are Pennsylvania citizens, diversity jurisdiction was unaffected and Defendants removed to this Court.

Plaintiffs' machinations are transparent.  Plaintiffs knew for *months* that Shadyside was the corporate name of Culper Research.  (*See* PFA Dkt. #14.)  If they wanted to amend their complaint in the prior action to add the corporate entity, they could have done so immediately after learning this information in June 2021.  Instead, they engaged in the motion to dismiss process without breathing a word of concern, and waited until Defendants' motion to dismiss was fully briefed—*i.e.*, after Defendants had incurred substantial legal fees—to try their hand at a new venue, a new court, and a new judge.  Plaintiffs' blatant forum shopping is—at a minimum—an abusive litigation tactic that should not be rewarded.

Beyond forum (and judge) shopping, Plaintiffs' state court filing was also an attempt to achieve another improper agenda:  amending their pleadings.  Plaintiffs first elected not to amend their original complaint (after meeting and conferring with Defendants in the prior action).  Plaintiffs then tried to augment their pleading through their motion to dismiss opposition.  Finally, Plaintiffs tried yet another approach, filing a new complaint in state court that purports to add a few additional allegations and new causes of action to supplement the original pleading.  Plaintiffs' new complaint also clearly seeks to avoid other important consequences.  In this case, Plaintiffs argue—for the first time—that *Delaware* law applies to this action, despite taking the position in the Prior Federal Action that *Pennsylvania* law applies.  (PFA Dkt. #21 p. 3 ("Choice of Law Rules Support Application of Pennsylvania Law").)  Plaintiffs go so far as scrubbing their prior allegations about LifeMD's principal place of business in New York—including it in the Prior Federal Action but omitting from this complaint.  Plaintiffs cannot circumvent their judicial

admissions or the limitations of the Federal Rules in amending their pleading by re-filing in a different forum.  In either event, they are wrong both times.  New York law clearly applies.

Even were this Court to allow Plaintiffs to file their new complaint—despite the improper attempts to avoid the Prior Federal Action, their motion to dismiss briefing, New York law, and the exacting federal pleading standards under *Iqbal*—the Complaint should be dismissed because the Article contains constitutionally protected opinion.  A review of the whole Article in context (which the relevant law requires) makes clear that the Article expresses Culper's opinions.  Culper discloses in the very first sentence that it is a short-seller of LifeMD, making clear that it has an obvious bias that the reader should consider.  The Article includes at the very beginning conspicuous disclaimers that it contains opinions based upon research conducted.  It also includes language that makes clear that the conclusions are opinion (*i.e.*, "we think" and "we believe").  These signals permeate the subsequent text.  Moreover, the Article was published on the Internet, on Culper's personal blog.  And Culper fully disclosed the sources on which it based its opinions—often consisting of Plaintiffs' own SEC filings and press statements—through hyperlinks and embedded tables.  Plaintiffs do not (and cannot) dispute the truth of these disclosed facts; they just do not like the opinions Culper reached.  But that does not matter.  Readers were fully equipped with all the information necessary to make their own determinations about the Article's opinions, rendering the statements Constitutionally-protected opinion and defeating the defamation claims.

In any event, the defamation and trade libel claims fail on the separate independent grounds that Plaintiffs—public figures for purposes of this defamation action—failed to plead that Culper made its statements with knowledge of falsity.  Indeed, any such allegation would be refuted by the citations throughout the Article supporting the opinions Culper reached.  The Complaint also fails to make anything more than conclusory and vague allegations about special damages.

Finally, the Complaint ignores the inconvenient truth that LifeMD's share price had been declining for months—long before Culper published a word about LifeMD. Indeed, in the two months prior to publication, the price dropped nearly 60%, a drop more substantial (by orders of magnitude) than anything the share price experienced in the wake of the Article's publication.

## STATEMENT OF FACTS[1]

LifeMD is a self-described "leading telehealth company" that trades on the New York-headquartered NASDAQ under the symbol "LFMD." (Compl. ¶¶ 8; 99.) LifeMD is incorporated in Delaware with its principal offices in New York. (*Id.* ¶ 8; PFA Dkt. #1 ¶ 10.)[2] LifeMD offers various "subscription-based proprietary telehealth products and services" catering to different demographics, including RexMD (a men's telehealth platform). (*Id.* ¶ 16.) Schreiber is LifeMD's Chairman and CEO and Galluppi is its Chief Technology Officer. (*Id.* ¶¶ 9, 10.) Defendant Shadyside is an independent stock research firm that conducts investment analysis and disseminates its reports via its personal web blog, www.culperresearch.com. (*Id.* ¶¶ 12, 22.) Lamarco is an employee and lone member of Shadyside. (*Id.* ¶ 13.)

On April 14, 2021, Culper published the Article, an Internet piece about LifeMD entitled "LifeMD, Inc.: Redwood Redux at RexMD," which appeared on the Culper Research blog. (*Id.* ¶ 29.) The Article addressed various items of concern to LifeMD investors, such as physician licensing discrepancies associated with LifeMD's platforms, the LifeMD business model, and LifeMD's executives' prior involvement with Redwood Scientific Technologies, Inc. ("Redwood"), which was sued by the FTC. (Compl. Ex. 1.) The Article was preceded by a lengthy disclaimer explaining that it contains opinions and was presenting information "as is," without any

---

[1] This Statement of Facts is drawn from the Complaint and, unless otherwise indicated as contradicted by the publicly-available information, the allegations are taken as true for purposes of this Motion only.
[2] LifeMD's website lists its "corporate address" as a New York address. *See* www.lifemd.com. And in its Civil Cover Sheet in the Prior Federal Action, LifeMD listed its "County of Residence" as "New York, NY." (PFA Dkt. 1-1.)

warranty and which was accurate "to the best of [Culper's] ability and belief." (*Id.* at 1.)  Finally, the first sentence of the Article made clear Culper was a short seller of LifeMD stock. (*Id.* at 2.)

LifeMD's stock had been experiencing steady decline long before Culper published the Article.  As the below graph demonstrates, the share price peaked at $33.02 on February 10, 2021, then dropping in value (then recovering slightly and dropping again) and closing at $11.84—a nearly ***60% drop*** from the peak—by April 13. 2021.  All of this activity occurred before the allegedly defamatory statements were published.



*See* LifeMD, Inc. Market Summary, GOOGLE SEARCH, (last visited Jul 6, 2021).[3]

This nearly 60% decline preceded, and therefore had nothing to do with, the publication of the Article. [4]  Instead, over the course of this these two months (from mid-February to mid-April 2021), LifeMD changed its corporate name, reported fourth quarter 2020 results, and filed annual

---

[3] Lifemd, Inc. Market Summary, GOOGLE SEARCH,
https://www.google.com/search?q=lifemd+stock&source=hp&ei=i0jnYP3mM9TYgSx4YHQCA&iflsig=AINFCbYAAAAAYOdWmV6cfwXi85FtE6_e_nEndDlYT4R&oq=lifemd+stock&gs_lcp=Cgdnd3Mtd2l6EAMyCwguEMcBEK8BEJMCMgIIADlCCAAyAggAMgIIADlCCAAyBQgAEMkDOg4ILhCxAxDHARCjAhCTAjoFCAAQsQM6CAguELEDEIMBOggILhDHARCjAjoICAAQsQMQgwE6CCwguELEDEMcBEKMCOgIILjoICC4QxwEQrwE6BQguELEDOgsIABCxAxCDARCLAzoICC4QsQMQjwM6DgguELEDEMcBEK8BEIsDOgoILhDHARCvARAKOgQlABAKUKgKWMgTYPQUaABwAHgAIgAFPiAHABZIBAjEymAEAoAEBggEHZ3dzLXdpdpergBAg&sclient=gwswiz&ved=0ahUKEwi92N_VkdTxAhVUrJ4KHbFwAIoQ4dUDCAw&uact=5#spf=1625770128533 (last visited July 6, 2021).
[4] The Court may take judicial notice of public records in resolving motions to dismiss. *McCullough v. Advest, Inc.,* 754 Fed. App'x 109, 110-11 (3d Cir. 2018).

report Form 10-K with the SEC.[5]  Indeed, when LifeMD published its fourth quarter results after market hours on March 29, 2021, LFMD stock fell from an $18.87 closing price, to close at $15.98 the following day, a decline of 15%.[6]  The shares tumbled another 26% over the following 2 weeks to close at $11.84 on April 13, 2021, for a total loss of 37%.[7]

The day the Article was published, April 14, 2021, the share price dropped from $11.84 to $9.00—less than $3.00 per share and significantly less than prior declines.  *Id.*  By June 8, 2021, the share price for LifeMD had bounced back to $15.85 a share.  *Id.*[8]  Plaintiffs, in any event, brought this suit against Culper for defamation, seeking to chill all analysis critical of LifeMD.

## ARGUMENT

### I.    New York Law Applies

Federal courts have given specific instructions for the unique facts of this type of case:  "in a defamation suit where the defamatory statements were published in more than one jurisdiction [*i.e.*, the Internet], the state with the significant interest is the domicile of the plaintiff."  *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997) (quoting *Rome v. Glanton*, 958 F. Supp. 1026, 1034 n.5 (E.D. Pa. 1997) and Restatement (Second) of Conflicts of Law, § 150); *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 432–33 (E.D. Pa. 2003) ("[G]iven that Franklin's principal place of business is in Pennsylvania, the Court is of the opinion

---

[5] *See* Conversion Labs to Become Life MD™ with Launch of New Concierge Telehealth Services, Intrado Globe Newswire (2021), https://www.globenewswire.com/fr/news-release/2021/02/12/2174951/0/en/Conversion-Labs-to-Become-Life-MD-with-Launch-of-New-Concierge-Telehealth-Services.html (visited 7/5/21); LifeMD Reports Q4 2020 Revenue up 227% to Record $12.9 Million, Full Year up 199% to Record $37.3 Million, SEC.gov, https://www.sec.gov/Archives/edgar/data/948320/000149315221007652/ex99-1.htm (visited 7/8/21); LifeMD, Inc. Form 10-K Annual Report (March 30, 2021), https://sec.report/Document/0001493152-21-007194/ (visited 7/8/21)
[6] *See* LifeMD, Inc. Common Stock (LFMD) Historical Data, Nasdaq (2021), https://www.nasdaq.com/market-activity/stocks/lfmd/historical (last visited Jul 6, 2021); SEC, Lifemd, Inc. Form 10-K Annual Report (March 30, 2021), https://sec.report/Document/0001493152-21-007194/ (last visited July 8, 2021).
[7]*See* LifeMD, Inc. Common Stock (LFMD) Historical Data, Nasdaq (2021), https://www.nasdaq.com/market-activity/stocks/lfmd/historical (last visited Jul 6, 2021)
[8] Plaintiffs reference another article published by Culper on May 27, 2021, but this second article does not form the basis of any cause of action.  Indeed, LifeMD's share price rose for days following publication of this second article.

that Pennsylvania has the most significant relationship with this dispute and will therefore apply Pennsylvania law to the remaining issues."); *Kraus Indus., Inc. v. Moore*, 2007 WL 2744194, at *4 (W.D. Pa. Sept. 18, 2007); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 472-73 (E.D. Pa. 2010). LifeMD's principal place of business is New York, it trades its stock in New York, and the individual plaintiffs allege defamation in connection with their roles at a New York company.[9]

## II.    Plaintiffs Failed to Plead Actionable Defamation.

### A.    The Challenged Statements are Statements Opinion Are Not Actionable.

Under New York law, a defamation plaintiff must plead: (1) a false statement that is (2) published to a third party (3) without privilege or authorization and that (4) plaintiff is caused harm or constitute defamation per se. *See Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999). But "[i]t is now beyond dispute that expressions of opinion are cloaked with the absolute privilege of speech protected by the First Amendment and 'false or not, libelous or not, are constitutionally protected and may not be subject of private damage actions.'" *Farb v. Baldwin Union Free School District*, 2006 WL 8439500, at *8 (E.D.N.Y. Mar. 3, 2006); *see also Brian v Richardson*, 87 N.Y.2d 46, 51 (1995) (defamation claim can only succeed if "'it is premised on published assertions of fact,' rather than assertions of opinion"). Thus, "[a]n expression of pure opinion is not actionable …, no matter how vituperative or unreasonable it may be." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). The New York Constitution affords even greater protection to statement of opinion than the First Amendment. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (1993) (quoting *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992)).

---

[9] In an attempt to distance LifeMD from New York and the inevitable conclusion that New York law applies, Plaintiffs removed the allegation from the Prior Federal Action that LifeMD is "incorporated under the laws of Delaware ***with its principal offices located in New York***." (PFA Dkt. #1 ¶ 10.) Plaintiffs deliberately omit that allegation in this case.

"[I]n distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose." *Brian,* 87 N.Y.2d at 51 (citing *Immuno AG. v Moor-Jankowski,* 77 N.Y.2d 235, 254 (1991)). " Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" *Id.* New York courts consider the following factors in determining whether a statement constitutes protected opinion: (1) whether the specific language has a precise meaning that is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether the context in which the statement appears signals to readers or listeners that the statement is likely to be opinion, not fact. *Id.*, 87 N.Y.2d at 51. Whether particular words constitute nonactionable opinion is a question of law for the Court's determination. *Steinhilber*, 68 N.Y.2d at 290.

Under New York law, a "pure opinion" is "a statement of opinion which is accompanied by a recitation of the facts upon which it is based," and "[a]n opinion not accompanied by such a factual recitation may, nevertheless be 'pure opinion' if it does not imply that it is based upon undisclosed facts." *Id.,* 68 N.Y.2d at 289. A "mixed opinion," on the other hand, "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it," and may be actionable. *Id.* Pure opinions "receive ***absolute*** constitutional protection," *id.*, 68 N.Y.2d at 289-90 (emphasis added), because they "ensure[] that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw the reader's own conclusions concerning its validity." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (defamation claim could proceed because it was *not* pure opinion, as speaker implied undisclosed facts); *Wexler v. Dorsey*

*& Whitney, LLP*, 2019 WL 5485265, at \*9 (E.D.N.Y. Oct. 25, 2019) ("while [plaintiff] disputes the accuracy of the summary of the case, this does not imply that the headline or statements in the article are based on undisclosed facts and does not, therefore, transform the post into actionable mixed opinion"), *aff'd*, 815 Fed. App'x 618 (2d Cir. 2020); *Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465 (1st Dep't 2021) ("court correctly found that the statements were accompanied by a recitation of facts on which they were based and therefore were nonactionable opinion").

### 1.    The Article's Context Signaled To The Reader it Was Opinion

A review of the entire Article—*i.e.*, the context of the challenged statements—makes clear that the challenged statements were protected opinion.  Most strikingly, the Article discloses, in the first sentence, that the author is short LifeMD stock and would therefore benefit from declines in LifeMD's share price.  (Compl. Ex. 1 at 2.)  Where an author reveals a short position, "[s]uch motive, as noted in [New York appellate cases], indicates to the reader that the author is expressing his opinion."  *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 959 N.Y.S.2d 92, at \*9 (N.Y. Sup. Aug. 16, 2012) ("[T]hat [the author] disclosed its short position, namely to the particular group of addressees who would appreciate the significance of a short-position, is sufficient to indicate to these particular readers that [author] was not disinterested"); *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 296 (E.D.N.Y. 2015), *aff'd* 670 Fed. App'x 731 (2d Cir. 2016); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (disclosing author's position "signal[ed] that he was not a disinterested observer"); *Eros Intern. PLC v. Mangrove Partners,* 2019 WL 1129196, at \*8 (N.Y. Sup. Mar. 8, 2019) (where short position disclosed, "[c]ourts have traditionally viewed an author's announced self-interest as evidence that the author's statements likely constitute opinions, not facts"), *aff'd*, 191 A.D.3d 465 (1st Dep't 2021).

Indeed, even before the reader reaches the Article, it first confronts a thorough disclaimer posted by Culper, which states:

> ***To the best of our ability and belief***, all information contained herein is accurate and reliable, and has been obtained from public sources we believe to be accurate and reliable, and who are not insiders or connected persons of the securities covered herein or who may otherwise owe any fiduciary duty or duty of confidentiality to the issuer. ***However, such information is presented "as is," without warranty of any kind – whether express or implied. Culper makes no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use.*** … ***All expressions of opinion are subject to change without notice.***

(Compl. Ex. 1 at 1 (emphasis added).)  New York courts have held that similar disclaimer language clarifies that a report's content is protected opinion.  *See, e.g.*, *Sabratek Corp. v. Keyser*, 2000 WL 423529, at *7 (S.D.N.Y. Apr. 19, 2000 ) (finding same language in disclaimer signaled "expressions of opinion"); *Eros Int'l*, 191 A.D.3d at 465 (same); *Yangtze River Port and Logistics Ltd. v. Hindenburg Research*, 2020 WL 905770, at *7 (N.Y. Sup. Feb. 25, 2020) (same).

Moreover, the disclaimer makes clear the Article "may contain forward-looking statements, estimates, projections, and opinions." (Compl. Ex. 1 at 1.)  It further notes that "[s]uch statements, estimates, projections and opinions may prove to be substantially inaccurate and are inherently subject to significant risks and uncertainties beyond Culper's control." (*Id.*)  When confronted with these clear disclaimers, a reasonable reader would understand that the content of the Article was Culper's opinion.  *See, e.g.*, *Silvercorp Metals*, 959 N.Y.S.2d 92 at n.5 (finding disclaimer stating the report contained the author's opinion dispositive as to opinion).

The Article is also replete with language of conjecture.  The Article opens with the following statement, setting the tone for the subsequent content:  "we ***think*** that LifeMD is a cash-burning charade which runs afoul of numerous FTC regulations and ***could*** suffer the same fate as Redwood … ." (Compl. Ex. 1 at 2 (emphasis added).)  This speculative language pervades the remainder of the article:  "apparently," "we think," "we find," "we believe," "we estimate," "we question," "in our view," and "lead us to believe."  These words of conjecture appear ***over 50 times*** in the article.  There is even a table that sets forth "Culper Research ***Views*** on LifeMD." (*Id.* at 5.)

The reader is bombarded with indications the Article is conveying opinion, not facts. *Brian*, 87 N.Y.2d at 53 ("given the use of the words 'apparently,' 'rumored,' and 'reportedly' …, a reasonable reader would understand the statements made about the plaintiffs as mere allegations to be investigated rather than as facts").

Finally, "[i]n addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 87 N.Y.2d at 51.[10]  The forum on which the Article appeared—Culper's personal investment analysis blog—signal to a reader opinion.  New York cases recognize that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts," and that this "observation … is equally valid for … blogs." *Sandals Resorts Int'l Ltd. v. Google*, 86 A.D.3d 32, 44 (1st Dep't 2011); *Bellavia*, 151 F. Supp. 3d at 295.[11]

### 2.    The Specific Challenged Statements Are Protected Opinion Because They Disclosed The Sources On Which the Opinions Were Based.

In any event, none of the enumerated statements Plaintiffs challenge are actionable defamation.  Because each of the challenged statements fully discloses the source on which it is based (and includes links to those sources), and because Plaintiffs do not allege that any of the underlying facts are false, the statements are pure opinion afforded full protection under the New York and federal Constitutions. *Steinhilber,* 68 N.Y.2d at 289.

- ***Statements regarding LifeMD's "Deceptive Business"***

Over the course of three pages, the Article explains why Culper believes LifeMD is engaged in auto-shipping/auto-billing, abusive telemarketing and other consumer concerns, and

---

[10] New York courts "frequently determine that investment analysis [] constitutes the author's opinion." *Yangtze River Port and Logistics*, 2020 WL 905770, at *7 (citing cases).

[11]  The Complaint suggests that the Article was published on Seeking Alpha (Compl. ¶ 33), but it was not.  Instead, Seeking Alpha chose to publish a few bullet points that it derived from the Article.

either links to or pastes in the sources for these opinions:  (i) Schreiber's ***own statements*** on LifeMD's March 29, 2021, earnings call, boasting that the recurring revenue model is "truly recurring basis every month. It's auto-shipped, auto-charged" (*see* https://seekingalpha.com/article/4416693-lifemd-inc-lfmd-ceo-justin-schreiber-on-q4-2020-results-earnings-call-transcript); (ii) LifeMD's ***own statements*** in its public filings that its subscriptions provide "recurring revenue" (*see* LifeMD Reports Q4 2020 Revenue up 227% to Record $12.9 Million, Full Year up 199% to Record $37.3 Million, SEC.gov, https://www.sec.gov/Archives/edgar/data/948320/000149315221007652/ex99-1.htm (last visited 7/5/21)); (iii) customer reviews that  complain of auto-shipping, automatic, recurring credit card charges, daily erroneous text messages, and "money back guarantees" not honored, which reviews appeared on consumer feedback sites including sitejabber.com and trustpilot.com.  (Compl. Ex. 1 at 11-12.)  Tellingly, Plaintiffs do not allege that these facts on which the opinion was based are false or that they were not disclosed.

Moreover, the Article's characterization of LifeMD/RexMD's business models as direct marketing response and paid search, respectively, echo how Plaintiffs themselves talk about these businesses.  *See, e.g.*, SEC, Lifemd, Inc. Form 10-K Annual Report (March 30, 2021), https://sec.report/Document/0001493152-21-007194/ (last visited July 8, 2021).[12]

Finally, Plaintiffs argue that the Article "falsely states and implies that this alleged consumer deception is attributable to 'Schreiber and Galluppi's histories.'"  (Compl. ¶ 70.)  But that is not what the Article says; instead, it opines that the author "***think[s]*** LifeMD's business is fatally flawed, unsustainable, and ***likely*** to draw regulatory scrutiny, especially in light of Schreiber and Galluppi's histories."  (*Id.* Ex. 1 at 5.)  This opinion is followed by an in-depth chart comparing

---

[12] Statements such as "cash-burning" and "pill pushing" are loose, hyperbolic language that New York courts do not recognize as actionable defamation.  *See, e.g., MiMedx Grp. Inc.*, 2018 WL 847014, at *7.

the FTC's description of business practices at Redwood, where Schreiber and Galluppi had corporate/ownership roles (*i.e.*, their "histories"), and documented business practices at LifeMD. (*Id.*)  Plaintiffs do not allege that the disclosed facts underlying this opinion are false.

- ***Statements concerning LifeMD's apparent use of "Unlicensed Doctors"***

The Article supports its opinions regarding LifeMD's "apparent" reliance on unlicensed doctors by highlighting two doctors listed on the RexMD platform.  LifeMD listed the first as a "licensed physician in Florida," yet his license was in fact suspended by Florida, and suspended, revoked, or restricted by other states and the Drug Enforcement Administration ("DEA").  As support, the Article links to (and embeds) a medical credential verification website, the DEA's fact findings on this physician, and various state websites detailing suspensions.  (Compl. Ex. 1 at 6-7.)  Plaintiffs do not dispute these underlying facts, or the Article's statement that this physician was suspended in several states, including Florida.  Indeed, Plaintiffs allege that when they learned this physician's background (years ***after*** he was reprimanded and even suspended by state medical authorities) they removed him from their physician network (*id.* ¶¶ 58-59), reinforcing the Article's opinion that it was problematic in the first instance for him to be listed with RexMD.

Moreover, based on the disclosed—and, importantly, ***undisputed***—facts that RexMD had partnered with a doctor who did not have a current valid medical license and would therefore have committed a felony had he prescribed a controlled substance in that state (*id.* Ex. 1 at 6-7), the Article reaches the opinion that LifeMD might have been exposed to—in the DEA's own words— "felony distribution of controlled substances."  (*Id.* at 2, 7.)  That the Article points out this possibility that LifeMD created for itself by listing this doctor as part of its RexMD network is not controversial, and certainly not defamatory.

13

The Article also points out that another doctor who LifeMD claimed to be a "licensed physician in California" was not in fact licensed in California—with links to California's medical board as support. (*Id.* pp. 7-8.) The Complaint **concedes** that Plaintiffs themselves falsely claimed a doctor to be licensed in California and notes that LifeMD made changes in response. (Compl. ¶¶ 59-60.) While Plaintiffs explain that this doctor never wrote a prescription in California, this is irrelevant to whether LifeMD made false claims about doctors' licensing, which it clearly did.

- ***Statements regarding Redwood Scientific***

The Article sets forth the following disclosed facts in support of the opinion regarding LifeMD executives' corporate/ownership roles at Redwood: Schreiber was Redwood's Resident Agent and Incorporator in Puerto Rico (with links to Puerto Rico's corporate registry and embedded table in Article); a Redwood shareholder entity holding over 200,000 shares of Redwood common stock had an address at the same Puerto Rico address as Schreiber (link to Redwood's Form S-1), and that shareholder entity's manager worked at a different company that Schreiber founded and headed (links to LinkedIn profiles); Redwood's Form S-1 (linked and embedded) showed that LifeMD former CFO Dagnery was the investor behind 802 Investments LLC, which held over 160,000 shares of Redwood common stock in 2016; and Redwood's Form S-1 (linked and embedded) showed that LifeMD former CFO Kalkstein was the investor behind Generous Limestones LLC, which in 2016 held over 50,000 shares of Redwood common stock. (Compl. Ex. 1 at 16-19.) LifeMD's own SEC filings (linked and embedded) noted Galluppi's Redwood role "overs[eeing] the information technology infrastructure, ranging from customer services software to CRM systems" and other "instrumental" contributions. (*Id.* at 5, embedding 2016 Form 10-K .) Plaintiffs do not dispute these underlying facts and **concede** that Galluppi was Redwood's CTO. (Compl. ¶ 44.) Instead, they allege only that Schreiber "held only a passive

investment and non-controlling interest in the company" (*Id*. ¶ 43)—which, even if true, does not contradict the Article's statements about Schreiber's significant share ownership or being listed as resident agent/incorporator on Redwood's founding documents. And while Plaintiffs argue Galluppi held no equity in Redwood (*id*. ¶ 44), critically, the Article never states otherwise.

Plaintiffs do not dispute that Redwood was involved in fraud investigated by the FTC—or that that the disclosed facts reveal that LifeMD current and former executives had both executive titles and substantial ownership positions in Redwood. But Plaintiffs then argue that it is somehow defamatory for Culper to convey an opinion that these executives had any involvement with Redwood in connection with the fraud. Plaintiffs argue that this ***opinion*** is unfounded because the FTC did not sue Schreiber or Galluppi or discuss them in one of their filings seeking liability against ***other*** defendants. (*Id*. ¶¶ 45-47.) But the Article nowhere states that the FTC sued Schreiber and Galluppi. Indeed, there could be any number of reasons the FTC did not pursue claims against Schreiber or Galluppi. It would not be surprising for there to be limited evidence regarding Schreiber or Galluppi in the FTC's case against ***other*** defendants. Plaintiffs' reliance on the FTC's case against those ***other*** defendants is therefore misguided. In any event, the disclosed facts on which Culper based its opinion—*i.e.*, that Redwood was charged with fraud and Schreiber and Galluppi's were both involved at Redwood—are not disputed, and they are presented to the reader so the reader can reach its own conclusions. That Plaintiffs are unhappy with the opinion Culper reached based on these disclosed facts—and without suggestion of any additional, undisclosed facts—is not grounds for a defamation claim.

- ***Statements regarding "Insider Transactions"***

The Article's statements about payments to LifeMD insiders are directly supported by LifeMD's Form 10-K, which the Article hyperlinks. The Form 10-K states that Schreiber is the

owner of JLS Ventures, which received 900,000 shares of stock for a 3-year extension of a 2017 "Services Agreement" to provide "operational management services." The Form 10-K also states that in 2018 and 2019, JLS Ventures was paid $172,500 and $374,000 for "credit card processing services." (Compl. Ex. 1 at 12, 16.) Based on these disclosed facts in the linked Form 10-K, the Article states that Schreiber received these shares for credit card processing services. Plaintiffs do not dispute these payments, which support the Article's statements about insider enrichment.

The Article also references "related party transactions" which is supported by LifeMD's 10-K disclosing, for example, payments to BV Global, a company apparently owned by Schreiber's father. (*Id.* at 15.) In response, Plaintiffs allege that LifeMD paid BV Global market rates. However, this is irrelevant to the statement that LifeMD engaged in this related-party transaction. Plaintiffs do not dispute these payments or Schreiber's relation to BV Global.

- ***Statements regarding "Cover-Up & Lies"***

Plaintiffs fail to plead why these statements are defamatory. In any event, the Article notes concerns with LifeMD's omission of Schreiber/Galluppi's previous roles at Redwood, supported by a link to a LifeMD corporate presentation setting forth their bios listing their previous companies (but not Redwood); as well as links to and embedded text from LifeMD's Form 10-K's showing ***no*** reference in Schreiber's bio to Redwood, and that the lone reference to Galluppi's prior role at Redwood in the 2016 Form 10-K was conspicuously scrubbed from the next year's 10-K. (*Id.* at 4-5.) Supported by these glaring omissions, which Plaintiffs do not contest, the Article opines concerns about a cover up regarding Redwood.

- ***Statements regarding "Mirrored" Conduct Between Redwood and LifeMD***

The Article explains why its author is "***concerned***" and "***think[s]***" LifeMD's "business practices mirror the same ones which landed Redwood in hot water." Specifically, the Article

notes that, like Redwood, LifeMD "***appears*** to use unlicensed doctors to dispense OTC medications, has implemented an autoshipping/autobilling scheme, failed to honor guarantees, and put in place abusive telemarketing practices." (*Id.* at 2, 5.) Based on these facts, which are amply documented either with hyperlinks or embedded text, the Article reaches its opinion about the similarity to allegations made by the FTC against Redwood. Again, Plaintiffs do not allege that any of these underlying facts are false or not disclosed in the Article.

### B.    Plaintiffs, Pubic Figures, Failed To Plead Actual Malice.

LifeMD, a "leading telehealth" publicly-traded company that files publicly-available reports with the SEC, is a 'public figure' for purposes of a defamation claim. *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717, at *8 n.5 (S.D.N.Y. 2018) (finding "no clear error" where, on motion to dismiss defamation claim, court held publicly-traded company was public figure); *see also Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.,* 61 Misc. 2d 226, 229 (Sup. Ct., Queens County 1969); *Alcor Life Extension Found. v. Johnson,* 2014 N.Y. Slip Op. 50784(U), at *8–9 (Sup. Ct., N.Y. County May 1, 2014), *aff'd*, 136 A.D.3d 464 (1st Dept. 2016); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977).[13] As such, Plaintiffs are required to plead "actual malice"—*i.e.*, that Culper acted with "knowledge that the statements were false or with reckless disregard of their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

---

[13] The individual plaintiffs are also "limited purpose public figures" under New York law because they voluntarily injected themselves into the public in relation to the subject matter of this defamation suit—*i.e.*, the financial condition and future prospects of LifeMD. *Winklevoss v. Steinberg,* 170 A.D.3d 618, 619 (2019). Moreover, the individual plaintiffs invited public attention to their views on LifeMD to sway public opinion. *Id.* Both individual plaintiffs have participated in public investor earnings calls, video interviews, and press releases regarding LifeMD's finances, platform, and prospects. *See* LifeMD, Inc. (LFMD) CEO Justin Schreiber on Q4 2020 Results - Earnings Call Transcript, SeekingAlpha 2021), https://seekingalpha.com/article/4416693-lifemd-inc-lfmd-ceo-justin-schreiber-on-q4-2020-results-earnings-call-transcript (last visited Jun 28, 2021); LifeMD, Inc., LifeMD Launches NavaMD™ Adding Direct-to-Patient Clinical Skincare Services to its Portfolio of Personalized Telehealth Brands GlobeNewswire News Room (2021), https://www.globenewswire.com/en/news-release/2021/04/07/2205885/6480/en/LifeMD-Launches-NavaMD-Adding-Direct-to-Patient-Clinical-Skincare-Services-to-its-Portfolio-of-Personalized-Telehealth-Brands.html (last visited Jun 28, 2021); LilaMax Media, Conversion Labs (OTCQB: CVLB) | CEO Justin Schreiber | Innovators with Jane King YouTube (2019), https://www.youtube.com/watch?v=5k_4EBnZ1Ek&amp;t=8s (last visited Jun 28, 2021).

The burden on Plaintiffs is high: "[a]ctual malice, even by way of recklessness, is therefore a difficult standard to meet, and quite purposefully so: as the Supreme Court has repeatedly noted, 'the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015).  And where, as here, the claims are brought in federal court, "a public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro*, 807 F.3d at 546 (quoting *Twombly*); *see also Biro*, 963 F. Supp. 2d at 278 ("Not only is "[p]roving actual malice [ ] a heavy burden, but, in the era of *Iqbal* and *Twombly* pleading actual malice is a more onerous task as well.").

Plaintiffs here fail to meet that high burden.  The Complaint includes no plausible allegations that Culper ***knew*** it was making false statements about Plaintiffs.  Nor could it—the Article fully disclosed all the sources on which its opinions were based, undermining any suggestion of intent.  Ultimately, Plaintiffs' "actual malice" allegation is that Culper stood to benefit financially from its short positions.  (Compl. ¶¶ 95-102.)  But under New York law, allegations of pecuniary gain cannot satisfy the stringent "actual malice" element of a defamation claim.  *See, e.g.*, *MiMedx Grp.*, 2018 WL 4735717, at *12 (holding, on a motion to dismiss, that financial motives alone do not support actual malice finding); *Egiazaryan*, 880 F. Supp. 2d at 501 ("the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term").

### C.    Plaintiffs Fail To Plead Special Damages

Finally, Plaintiffs' defamation and trade libel claims must be dismissed because Plaintiffs failed to adequately plead special damages, which are "limited to losses having pecuniary or

economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992). In addition, "special damages must be the natural and immediate consequence of the disparaging statements." *Id*. Plaintiffs' recitation of alleged damages (Compl. ¶¶ 75-80) is inadequate as it lacks any specificity, let alone itemization. *See Kirby*, 784 F. Supp. at 1116, 1118 (without specifying losses or identifying who acted on defamatory statements, special damages not pled); *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441 (1960). Nor have Plaintiffs plausibly alleged it was the allegedly defamatory statements—as opposed to the myriad other factors that led to the near-60% drop in LifeMD's share price prior to the Article's publication—that led to alleged damages.[14]

## III.    Plaintiffs' Non-Defamation Claims Must Be Dismissed

The non-defamation claims must be dismissed as they are based on the same conduct, and allege the same damages, as the defamation claims. *Jain v. SIFMA*, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009) ("New York law considers claims sounding in tort to be defamation claims ... where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation."); *Anyanwu v. Columbia Broad. Sys., Inc.,* 887 F. Supp. 690, 693 (S.D.N.Y. 1995) ("New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained."). Separately, Plaintiffs fail to plead the elements of these tort claims as follows:

- **Trade Libel**. Statements of opinion cannot support trade libel. *See Sandler v. Simoes,* 609 F. Supp. 2d 293, 303 (E.D.N.Y. 2009*); Vitro S.A.B. de C. V. v. Aurelius Capital Mgmt, L.P.,* 99 A.D.3d 564, 565 (1st Dep't 2012*)*. Moreover, actual malice—which Plaintiffs fail to plausibly plead—is a necessary element of a trade libel claim. *See Trepel v. Hodgins*, 183 A.D.3d 429, 429 (1st Dep't 2020). Nor does the Complaint allege that the statements were made out of "spite or ill will" to satisfy the "common law malice" standard. *Solmetex, LLC. v. Dental Recycling*

---

[14] LifeMD fails to plausibly allege that the challenged statements are defamation per se, excusing the pleading of special damages. A corporate plaintiff must plead that the statement injured "its overall business reputation or its credit standing." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 489 n. 23 (S.D.N.Y. 2011). Yet LifeMD's stock had been in steady decline for months prior to the publication of the Article.

*of N. Am., Inc.*, 2017 WL 2840282, at \*6 (S.D.N.Y. June 26, 2017).  Plaintiffs allege instead that Culper was motivated purely out of self-interest in driving down the share price.  (Compl. ¶ 95.)

- **False Light.** New York does not recognize the tort of false light. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 123 (1993).

- **Unjust Enrichment**.  This claim is not viable because Plaintiffs failed to allege that Culper received a benefit from Plaintiffs, as any short-selling profit did not come from Plaintiffs but rather through stocks bought and sold. *See Silvercorp Metals*, 959 N.Y.S.2d at 92.

- **Deceptive Trade Practices Under New York Law**.  "To state a cause of action under [General Business Law] § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc*., 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004).  Plaintiffs do not allege that Culper engaged in a consumer-oriented act. Plaintiffs also do not allege harm to the public interest. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (claimants under § 349 must allege conduct that has "significant ramifications for the public at large" in order to properly state a claim).[15]

- **Unfair Competition**.  New York recognizes seven bases for unfair competition—monopoly; restraint of trade; trade secrets; trademark infringement, palming off; misappropriation; and false labeling or advertising. *See,* 2 N.Y. PJI3d 3:58, at 525 (2007).  Plaintiffs do not plausibly allege that Culper engaged in any of this conduct.

- **Civil Conspiracy.**  New York does not recognize an independent tort cause of action for civil conspiracy. *Jebran v. LaSalle Bus. Credit, LLC,* 33 A.D. 3d 424, 425 (1st Dep't 2006)). In any event, LifeMD fails to make any plausible allegations of fact that Culper entered into any agreement with any specific party in furtherance of a purpose to damage LifeMD, as is required to state a claim for civil conspiracy.  *Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.,* 2021 WL 665031, at \*3 (S.D.N.Y. Feb. 19, 2021); *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900-01 (2d Dept. 2013) (dismissing conspiracy claim against defendant for whom plaintiff did not allege agreement to participate in or specific act of participation in actionable tort).

## CONCLUSION

For the reasons set forth herein, Defendants, Shadyside Partners, LLC and Christian Lamarco, respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.

---

[15] Even a claim under Delaware's Unfair Trade Practices Act fails (though New York law applies to this action) because that statute addresses only "false" statements of fact.  *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. Oct. 8, 2008).  As set forth herein, the challenged statements in the Article are statements of opinion based on disclosed, uncontested facts.

Respectfully submitted,

COZEN O'CONNOR

BY:     /s/ Michael de Leeuw

       Michael de Leeuw  *(admitted pro hac vice)*
       Tamar Wise *(admitted pro hac vice)*
       Rachel J. Wenger (Pa. I.D. 325647)
       COZEN O'CONNOR
       One Oxford Centre
       301 Grant Street, 41st Floor
       Pittsburgh, PA  15219
       Telephone: 412.620.6500
       *Attorneys for Christian Matthew Lamarco*
       *and Shadyside Partners, LLC*