**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LIFEMD, INC., JUSTIN SCHREIBER, and
STEFAN GALLUPPI,

      Plaintiffs,

v.

CHRISTIAN MATTHEW LAMARCO,
SHADYSIDE PARTNERS, LLC (d/b/a CULPER
RESEARCH), and JOHN/JANE DOES 2–10,

      Defendants.

Civil Action No.: 2:21-cv-01273

Honorable William S. Stickman IV

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

GORDON REES SCULLY MANSUKHANI, LLP
707 Grant Street
Suite 3800
Pittsburgh, PA 15219
(412) 577-7400
*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .......................................................................................1

LEGAL STANDARD .................................................................................................3

ARGUMENT ..............................................................................................................4

     I.     Choice Of Law Issues Do Not Warrant Dismissal ........................................4

     II.    The Complaint States Well-Pled Defamation Claims ...............................7

          A.     Defendants' Statements Were Purported Statements Of Fact ...................8

              1.     The Content Of Defendants' Statements Was Factual ...................8

              2.     The Context Of The Defamatory Statements Was Factual............10

          B.     Defendants' Statements Were Not Protected Opinion.............................11

     III.   LifeMD, Schreiber, And Galluppi Need Not, But Did, Plead Actual
          Malice ........................................................................................................15

          A.     Plaintiffs Are Not Public Figures Required To Plead Actual Malice ........15

          B.     Plaintiffs Pled Actual Malice ...................................................................17

     IV.   LifeMD, Schreiber, And Galluppi Need Not, But Did, Plead Special
          Damages.....................................................................................................18

     V.    The Complaint States Well-Pled Non-Defamation Claims ..................................20

CONCLUSION...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agriss v. Roadway Exp., Inc.*,
   483 A.2d 456 (Pa. 1984) ........................................................................... 18

*American Future Sys., Inc. v. BBB of E. Pa.*,
   923 A.2d 389 (Pa. 2007) ........................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 3

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
   151 F. Supp. 3d 287 (E.D.N.Y. 2015) ...................................................... 13

*Bickling v. Kent Gen. Hosp., Inc.*,
   872 F. Supp. 1299 (D. Del. 1994) ......................................................... 6, 7

*Boehm v. Riversource Life Ins. Co.*,
   117 A.3d 308 (Pa. Super. 2015) ............................................................... 20

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) ......................................................................... 7

*Brian v. Richardson*,
   87 N.Y.2d 46 (1995) ................................................................................. 13

*Brinich v. Jencka*,
   757 A.2d 388 (Pa. Super. 2000) ................................................................. 7

*Byars v. School Dist.*,
   942 F. Supp. 2d 552 (E.D. Pa. 2013) ......................................................... 8

*Celle v. Filipino Rep. Enterprises Inc.*,
   209 F.3d 163 (2d Cir. 2000) ..................................................................... 19

*Charles Atlas Ltd v. Time-Life Books Inc.*,
   570 F. Supp. 150 (S.D.N.Y. 1983) ............................................................. 7

*Contento v. Mitchell*,
   28 Cal. App. 3d 356 (1972) ...................................................................... 19

*Cooperativa De Seguros Multiples De Puerto Rico v. San Juan*,
    294 F. Supp. 627 (D.C. Puerto Rico 1968) .......................................................... 6, 7

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014) ............................................................................................ 15

*Davis v. Ross*,
    754 F.2d 80 (2d Cir. 1985) .................................................................................... 19

*Dillon v. City of New York*,
    261 A.D.2d 34 (N.Y. 1st Dep't 1999) ..................................................................... 7

*Egiazaryan v. Zalmayev*,
    880 F. Supp. 2d 494 (S.D.N.Y. 2012) ................................................................... 13

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016) ............................................... 12, 14, 16, 19

*Eros Int'l. PLC v. Mangrove Partners*,
    2019 WL 1129196 (N.Y. Sup. Mar. 8, 2019) .................................................. 12, 13

*Farmland Partners Inc. v. Fortunae*,
    2021 WL 1978739 (D. Colo. 2021) ...................................................................... 12

*First Choice Fed. Credit Union v. Wendy's Co.*,
    2017 WL 1190500 (W.D. Pa. Mar. 31, 2017) ......................................................... 6

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
    267 F. Supp. 2d 425 (E.D. Pa. 2003) ...................................................................... 4

*FTC v. Cardiff, et al.*,
    5:18-cv-02104 (C.D. Cal. 2018) ........................................................................... 17

*Garcia-Garcia v. Costco Wholesale Corporation*,
    878 F.3d 411 (1st Cir. 2017) .................................................................................... 7

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ......................................................................................... 16, 17

*Gierbolini Rosa v. Banco Popular de Puerto Rico*,
    930 F. Supp. 712 (D.P.R. 1996) (1st Cir. 1997) .................................................... 18

*Gilliland v. St. Joseph's at Providence Creek*,
    2006 WL 258259 (Del. Super. Ct. Jan. 27, 2006) ................................................... 7

*Graboff v. Colleran Firm*,
    744 F.3d 128 (3d Cir. 2014) .................................................................................... 7

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ............................................................................. 8, 14

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) .................................................................................... 17

*Herbert v. Lando*,
  441 U.S. 153 (1979) .................................................................................... 18

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...................................................................... 16

*Joseph v. Scranton Times L.P.*,
  959 A.2d 322 (Pa. Super. 2008) ................................................... 8, 14, 18, 19

*Karl v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  78 F. Supp. 2d 393 (E.D. Pa. 1999) .............................................................. 6

*Keating v. EquiSoft, Inc.*,
  2014 WL 4160558 (E.D. Pa. Aug. 22, 2014) ................................................ 6

*Kovarik v. Downey*,
  2010 WL 2294523 (M.D. Pa. June 4, 2010) .................................................. 6

*Livingston v. Murray*,
  417 Pa. Super. 202 (1992) ........................................................................... 15

*MacLeod v. Trib. Pub. Co.*,
  52 Cal. 2d 536 (1959) ................................................................................... 8

*Matherson v. Marchello*,
  100 A.D.2d 233 (N.Y. 2d Dep't 1984) ......................................................... 19

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ............................................................... 8, 10, 11, 12, 14

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .................................................................................... 17

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
  151 Cal. App. 4th 688 (Cal. App. 1 Dist. 2007) ......................................... 13

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ....................................................................... 18

*Pelagatti v. Cohen*,
  536 A.2d 1337 (Pa. Super. Ct. 1987) .......................................................... 15

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................ 3

*Pilchesky v. Gatelli*,
   12 A.3d 430 (Pa. Super. 2011) ........................................................... 18

*Sabratek Corp. v. Keyser*,
   2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) ........................................ 13

*Shadle v. Nexstar Broad. Grp., Inc.*,
   2014 WL 3590003 (M.D. Pa. July 21, 2014) ...................................... 18

*Simoni v. Swan*,
   2019 WL 5485209 (Cal. Ct. App. Oct. 25, 2019) ................................ 12

*Sparkler v. Home Infusion Sols., LLC*,
   2013 WL 6476501 (E.D. Pa. Dec. 9, 2013) .......................................... 6

*Spence v. Funk*,
   396 A.2d 967 (Del. 1978) .............................................................. 7, 19

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986) ......................................................................... 13

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*,
   553 F. Supp. 2d 680 (N.D. Tex. 2008) ................................................ 12

*Tiversa Holding Corp. v. LabMD, Inc.*,
   2014 WL 1584211 (W.D. Pa. 2014) ......................................... 13, 15, 17

Trzaska v. L'Oreal USA, Inc.,
   865 F.3d 155 (3d Cir. 2017) ................................................................ 4

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
   898 F.2d 914 (3d Cir. 1990) .............................................................. 17

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
   898 F.2d 914 (3d Cir. 1990),
   *cert. denied*, 498 U.S. 816 (1990) ...................................................... 7

*Waldbaum v. Fairchild Publ'g, Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ......................................................... 17

*Weaver v. Lancaster Newspapers, Inc.*,
   926 A.2d 899 (Pa. 2007) .................................................................... 18

*Wilson v. American General Finance Inc.*,
   807 F. Supp. 2d 291 (W.D. Pa. 2011) ................................................ 14

*Wong v. Jing*,
117 Cal. Rptr. 3d 747 (2010) ................................................................................. 7

*ZAGG, Inc. v. Catanach*,
2012 WL 4462813 (E.D. Pa. Sept. 27, 2012) ........................................................ 11

**Statutes**

42 Pennsylvania Consolidated Statutes, Section 8343 ...................................................... 7

California Civil Code, Section 45 ...................................................................................... 7

California Civil Code, Section 46 ...................................................................................... 7

**Rules**

Federal Rule of Civil Procedure, Rule 12 ................................................................... 3, 15

**Regulations**

Restatement (Second) of Conflict of Laws § 150 (1971), Comment e ...................................... 4, 5

Restatement (Second) of Conflict of Laws § 150 (1971), Comment f ...................................... 4, 5

Restatement (Second) of Conflict of Laws § 150(2) (1971) ...................................................... 4, 5

Restatement (Second) of Torts § 569 ................................................................................. 18

Restatement (Second) of Torts, § 566, comment (c) ............................................................ 15

## INTRODUCTION

Defendants engaged in a classic "short and distort" scheme—a scheme to profit in the stock market by making defamatory statements about LifeMD, Inc. and two of its officers, Justin Schreiber and Stefan Galluppi.  The scheme unfortunately worked.  Through a purported investigative research report distributed across the internet, Defendants falsely asserted that Plaintiffs committed fraud, lies, cover-ups, potential crimes and illegal acts, insider dealing, and abusive, unfair, and deceptive business practices.  As intended, LifeMD's share price plummeted and the officers' reputations were tarnished while Defendants secured a quick financial windfall. To now avoid accountability, Defendants try to transform, minimize, and spin the content of the purported investigative research report to argue it was innocuous, mere opinion, or otherwise grounded in fact.  This is nothing more than an exercise in "shapeshifting."  Because Defendants' made false statements of purported fact, Plaintiffs have stated well-pled claims and Defendants' motion to dismiss should be denied.[1]

## FACTUAL BACKGROUND

Plaintiff LifeMD, Inc. (NASDAQ: LFMD) is a leading telehealth company with direct-to-patient product and service offerings, including medication deliveries and virtual medical treatments from licensed providers.  Compl., Dkt. 1-2, ¶¶ 8, 15.  LifeMD's officers include Plaintiffs Justin Schreiber (Chairman & CEO) and Stefan Galluppi (CTO).  *Id*. ¶¶ 9-10. Defendants Christian Lamarco and Shadyside Partners, LLC ("Shadyside Partners") are short-sellers who author and publish anonymous "investigative investment research" reports as part of

---

[1]     Defendants' motion begins with a vitriolic attack on the fact that Plaintiffs previously dismissed the earlier case against Lamarco in this Court without prejudice and thereafter sued Lamarco and Shadyside Partners LLC in Pennsylvania state court.  This is misdirection and also irrelevant, as the attack has nothing whatsoever to do with the merits or the well-pled allegations of Plaintiffs' Complaint.  In all events, Plaintiffs had the right to dismiss and sue in state court, just as Defendants had the right to remove to this Court.

"short and distort" schemes.  *Id.* at  ¶¶ 11-12, 22, 24, 26-27.  Defendants John Does are unknown

persons who worked with or for Lamarco and/or Shadyside Partners to defame and injure LifeMD,

Schreiber, and Galluppi.  *Id.* ¶ 14.

On April 14, 2021, Defendants published an investigative report entitled "LifeMD, Inc.

(LFMD):  Redwood Redux at RexMD" (the "Report") on www.culperresearch.com and Twitter.

*See id.* ¶ 29.  *See also* ECF No. 1.  The Report identified no author by name and was 19 pages in

length, complete with graphs, pictures, charts, an appendix, and a representation that "**all**

**information contained herein is *accurate and reliable*, and has been obtained from public**

**sources we believe to be accurate and reliable**."  *Id.* at ¶¶ 30, 36-37 (emphasis added).

Defendants distributed the Report globally on the internet, and the Report was also linked to

several investor websites.  *Id.* at ¶ 32.

The purpose of the Report was simple—to trash LifeMD, Schreiber, and Galluppi and to

do so in a way that appeared "accurate and reliable."  *E.g*., *id.* at ¶¶ 30, 36-37, 93, Exhibit 1.  The

Report asserted as fact:  that  LifeMD, Schreiber, and Galluppi perpetrated fraud, as well as lies

and a "cover-up," tied to a California company called Redwood Scientific, which "mirrors" fraud

at LifeMD; that LifeMD, Schreiber, and Galluppi engaged in potential criminal conduct involving

the "use of unlicensed doctors to dispense pills"; that LifeMD, Schreiber, and Galluppi "enriched

themselves via related-party transactions" … "using the Company as a personal piggy bank"; and

that LifeMD, Schreiber, and Galluppi used business "scheme[s]" with direct marketing and

subscription billing for the purpose of "customer deception."  *Id.* ¶ 33.  The above and many other

purported "accurate and reliable" statements in the Report were entirely false.  *Id.* at 34, 40-74.

Schreiber and Galluppi were not involved with and were not implicated in any fraud at

Redwood Scientific and thus have not perpetuated any fraud or similar fraud at LifeMD.  *Id.* at ¶¶

40-74.  LifeMD, Schreiber, and Galluppi have not used unlicensed doctors or engaged in potential

criminal conduct to dispense pills.  *E.g., id.* at ¶¶ 33, 34, 51-53.  LifeMD, Schreiber, and Galluppi have not enriched themselves with related-party transactions or used LifeMD as personal piggy bank.  *Id.* at ¶ 62-68, Exhibit 1.  LifeMD, Schreiber, and Galluppi have not used direct marketing or subscription billing schemes to perpetrate customer deception.  *Id.* at ¶ 69-71.

Although entirely false, the purported "accurate and reliable" statements hit their mark. LifeMD's share price fell 24%, which led to a drop in the company's market value, reduced ability to attract investors, higher costs of capital, loss of potential loans and investment in excess of $40M, as well as inability to hire certain software developers and other personnel.  *Id.* at ¶¶ 75-76, 83.  For the individuals, Schreiber and Galluppi suffered reputational injury and lost value in their personal holdings in the company—over 3 million and 1.5 million shares, respectively.  *Id.* at ¶ 77-78.  Quoting Defendants' defamatory statements verbatim, financial analysts published negative "investor alerts" about LifeMD and plaintiffs' lawyers prepared and filed class action complaints against LifeMD and its officers, while Schreiber and Galluppi were widely attacked as criminals and fraudsters on social media.  *Id.* ¶¶ 38, 79, 82, 86-88.  Exactly as planned, Defendants scored a quick and likely massive financial windfall.  *Id.* ¶¶ 2, 89-97.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  All well-pled allegations of material fact are taken as true and construed in the light most favorable to plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  The issue is not whether plaintiffs will ultimately prevail, but whether plaintiffs are entitled

to offer evidence in support of their claims.  *See Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017).

## ARGUMENT

### I.    Choice Of Law Issues Do Not Warrant Dismissal

Defendants argue that New York law necessarily applies because Plaintiff LifeMD has its principal place of business there and is traded on NASDAQ.  *See* Mot. to Dismiss at 6-7.  Yet, Defendants' argument intentionally overlooks where Defendants Lamarco and Shadyside reside, where Plaintiffs Schreiber and Galluppi reside, and where Plaintiff LifeMD also resides.  Plaintiff Schreiber resides in Puerto Rico.  Compl. ¶ 9.  Plaintiff Galluppi resides in California.  *Id.* at ¶ 10.  Defendant Lamarco resides in Pennsylvania.  *Id.* at ¶ 11.  Because Lamarco is the member of Defendant Shadyside Partners, *id.* at ¶ 12-13, the limited liability company also resides in Pennsylvania.  Further, both Defendant Shadyside Partners and Plaintiff LifeMD are organized under Delaware law, *id.* at ¶ 8, 12, and thus both also reside in Delaware.

This is important because Pennsylvania applies the "most significant relationship" test in the event of conflict of laws.  *See Franklin Prescriptions, Inc. v. The New York Times Co.,* 267 F. Supp. 2d 425, 432 (E.D. Pa. 2003) (applying Restatement (Second) of Conflict of Laws § 150(2) (1971)).  Although Defendants give lip service to the most significant relationship test, Defendants' choice of law argument is actually grounded in the *lex loci delicti*, or place of injury, test and thus their view that New York was the place of injury.  But the most significant relationship test is broader.  The relevant factors include the place of injury, the place of conduct causing injury, the place of a plaintiff's residence or incorporation, and the place of central relationship among the parties.  *See* Restatement (Second) of Conflict of Laws § 150 (1971), Comments e and f.  Defendants do not meaningfully address these facts to argue that New York law must apply, even overlooking the fact that the place of injury was not New York for Schreiber

and Galluppi.[2]

To be sure, if there is a conflict between Pennsylvania defamation law and the laws of other states whose defamation law may apply, application of the most significant relationship test could ultimately be challenging.  Puerto Rico law most likely applies to Schreiber's claims, California law most likely applies to Galluppi's claims, and either Delaware or New York law most likely applies to LifeMD's claims.  The fact that Shadyside Partners is a Delaware limited liability company and LifeMD is a Delaware corporation is significant.  Restatement, § 150, Comment f (factors such as state of incorporation or state of organization of corporations are also considered when determining the forum with the most significant relationship).  The fact that Defendants each reside in Pennsylvania, as a likely place of conduct causing injury, is also significant.  Restatement, § 150, Comments e and f (the state or states where a defendant did their defamatory act will also impact the state with the most significant relationship).  Further, discovery may reveal additional significant facts that impact choice of law, including the identities, activities, and domiciles of the Doe Defendants.  In short, the notion that New York law must now apply to all claims simply because Defendants say LifeMD was mostly harmed there is simplistic.

In all events, the Court need not reach the issue now and may never need to reach the issue.

---

[2]    Defendants' argument that Schreiber and Galluppi's claims are governed by New York law is especially misplaced.

> When there has been publication in two or more states of an aggregate communication claimed to be defamatory, at least most issues involving the tort should be determined, subject to the possible limitation stated in Comment *d*, by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation.  This will usually be the state of the plaintiff's domicil if the matter complained of has there been published.

Restatement, § 150, Comment e.  By not addressing Puerto Rico law as to Schreiber or California law as to Galluppi, or for that matter Pennsylvania or Delaware law, Defendants effectively ignored their burden and effectively waived any argument to dismiss Schreiber and Galluppi's separate claims against them.  And it would be improper to make any such argument on reply.

At least now, this Court "may 'refer interchangeably to the laws of the states whose laws potentially apply,' or rely solely on forum law" because the basic elements of the central claims asserted are the same. *Keating v. EquiSoft, Inc.,* 2014 WL 4160558, at *3 (E.D. Pa. Aug. 22, 2014) (citations omitted). *See, e.g., id.* at *6 ("The elements for a libel claim are similar under Pennsylvania and New York law.") (citation omitted); *Kovarik v. Downey*, 2010 WL 2294523, at *2 n.2 (M.D. Pa. June 4, 2010) ("court is unable to discern any meaningful difference between Pennsylvania and New York law as it relates to slander"); *Karl v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 78 F. Supp. 2d 393, 396 (E.D. Pa. 1999) ("Because the parties do not agree on a choice of law, and because the result here does not depend on whether California or Pennsylvania jurisprudence governs the analysis, we will cite law from both jurisdictions as we move forward."); *Bickling v. Kent Gen. Hosp., Inc.,* 872 F. Supp. 1299, 1307 (D. Del. 1994) (listing elements of Delaware defamation similar to Pennsylvania law); *Cooperativa De Seguros Multiples De Puerto Rico v. San Juan*, 294 F. Supp. 627, 630 (D.C. Puerto Rico 1968) ("law of libel of Puerto Rico, moreover, is derived from the United States and can be best interpreted by reference to American Case Law when no local precedents are available") (citation omitted).

Defendants' choice of law argument ignores that three of the four parties to this action have no presence in New York and two of the four parties share a presence in Delaware. To be sure, Plaintiffs maintain that their claims are well pled regardless of choice of law. Nevertheless, the Court need not parse through these heavily fact-dependent legal issues now. *See First Choice Fed. Credit Union v. Wendy's Co*., 2017 WL 1190500, at *1-2 (W.D. Pa. Mar. 31, 2017) (ruling no abuse of discretion on motion to dismiss to defer choice of law analysis pending discovery) (citing cases); *Sparkler v. Home Infusion Sols., LLC*, 2013 WL 6476501, at *5 (E.D. Pa. Dec. 9, 2013) (choice of law analysis "often is more appropriately undertaken at the summary judgment stage of litigation").

## II.    The Complaint States Well-Pled Defamation Claims

The basic elements of defamation are the same in Pennsylvania, Delaware, New York, Puerto Rico, and California:  (i) a false and defamatory statement about plaintiff, (ii) published by defendant without privilege or authorization, (iii) to a third party who understood the statement as pertaining to plaintiff and understood the statement's defamatory meaning, (iv) resulting in harm to plaintiff.  *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8343; *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990) (applying Pennsylvania law); *Garcia-Garcia v. Costco Wholesale Corporation*, 878 F.3d 411, 427 (1st Cir. 2017) (applying Puerto Rico law); Cal. Civ. Code §§ 45-; *Wong v. Jing,* 117 Cal. Rptr. 3d 747, 761 (2010); *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. 1st Dep't 1999); *Bickling,* 872 F. Supp. at 1307.[3]

Further, in these states, statements that falsely accuse another of crimes or otherwise impugn the integrity of one's business, profession, or trade are presumed defamatory, or defamatory *per se*.  *See, e.g.*, Cal. Civ. Code §§ 45a, 46; *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (applying New York law); *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. 2000); *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978); *Cooperativa De Seguros Multiples De Puerto Rico*, 294 F. Supp. at 630.

Here, Defendants focus their defense on the argument that their purported "accurate and reliable" statements were nonactionable opinion.  *See* Mot. to Dismiss at 7-19.  Defendants are wrong.

---

[3]    In these states, plaintiffs may likewise establish defamation by implication or insinuation.  *See, e.g., Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (applying Pennsylvania law); *Gilliland v. St. Joseph's at Providence Creek*, 2006 WL 258259, at *8 (Del. Super. Ct. Jan. 27, 2006); *Charles Atlas Ltd v. Time-Life Books Inc.*, 570 F. Supp. 150, 153 (S.D.N.Y. 1983).

## A.  Defendants' Statements Were Purported Statements Of Fact

The hallmark test for whether an alleged defamatory statement is actionable is whether the statement is "sufficiently factual to be susceptible of being proved true or false."  *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990).  The content and context of the statement are the relevant factors.  *See Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. 2008) (court "must consider the full context of the [statement] to determine the effect [it is] fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.") (citation omitted); *Byars v. School Dist.,* 942 F. Supp. 2d 552, 564 (E.D. Pa. 2013) (court "must look at the language of the communication, its implications and the context in which it was made, and determine how a reasonable person would interpret the statement"); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993); *MacLeod v. Trib. Pub. Co.,* 52 Cal. 2d 536, 546-47 (1959).

### 1.  The Content Of Defendants' Statements Was Factual

Defendants' purported "accurate and reliable" statements falsely charged Plaintiffs with fraud, lies, cover-ups, potential crimes and illegal acts, insider dealing, and abusive, unfair, and deceptive business practices.  These statements were entirely false.  Whether phrased as accusations or investigative findings, these statements were presented as factual.

*Redwood Scientific (Compl. ¶ 33.a.).*  Defendants state, imply, and insinuate that LifeMD, Schreiber, and Galluppi were "intimately involved" in a "wide ranging" and "material" fraud at Redwood Scientific and are now doing the same at LifeMD.  Indeed, Defendants titled the Report "LifeMD, Inc. (LFMD):  Redwood Redux at RexMD," signaling that fraud committed by Schreiber and Galluppi at Redwood Scientific has continued at LifeMD.  Defendants repeatedly state that "practices" at LifeMD "mirror" the fraud at Redwood Scientific.  One of the Report's bolded sub-headings could not be more clear:  "**LifeMD Practices Mirror the Redwood**

**Scientific Fraud**.”

*Unlicensed Doctors (Compl. ¶ 33.b.)*.  Defendants state, imply, and insinuate that LifeMD, Schreiber, and Galluppi “use” and “rely” on “unlicensed doctors” to “dispense” and “sell[ ]” “controlled substances.”  Defendants charge LifeMD is being used “as an instrument to felony distribution of controlled substances.”  Defendants describe the licensure issue as a widespread problem, repeatedly using the plural noun “unlicensed doctors.”

*Insider Transactions*. *(Compl. ¶ 33.c.)* Defendants state, imply, and insinuate that LifeMD, Schreiber, and Galluppi  “enriched themselves via related-party transactions,” “using the Company as a personal piggy bank.”  Defendants state that the “insider” and “related-party” deals have caused massive harm to shareholders.  According to another bolded sub-heading in the Report, “**At LifeMD, Insiders Win While Common Shareholders Lose**.”

*Deceptive Business (Compl. ¶ 33.d.)*.  Defendants state, imply, and insinuate that LifeMD, Schreiber, and Galluppi operate a scam business “whose core strength is built on customer deception.”  Defendants describe the business as employing an “autoshipping/autobilling scheme,” “abusive telemarketing practices,” and “false pretenses of ‘one-time purchases’.”  This, according to Defendants, is “likely to draw regulatory scrutiny, especially in light of Schreiber and Galluppi’s histories.”

*Cover-Up & Lies (Compl. ¶ 33.e.)*.  Defendants state, imply, and insinuate that LifeMD, Schreiber, and Galluppi lied about and hid alleged “involvement in material fraud, namely in Redwood Scientific.”  Defendants state that LifeMD, Schreiber, and Galluppi concealed their “fraudulent” practices by removing references to Redwood Scientific from résumés, corporate presentations, and SEC filings.  Defendants refer to the so-called “cover-up” by LifeMD, Schreiber, and Galluppi no fewer than four times throughout the Report.

As noted in the Report’s introduction, Defendants identified that all of their statements

- 9 -

were "accurate and reliable." *E.g.*, *id.* at ¶¶ 30, 36-37, 93, Exhibit 1. By this and the actual words

used, Defendants' statements did not reflect "imaginative expression" or "loose, figurative, or

hyperbolic language which would negate the impression" that LifeMD, Schreiber, and Galluppi

committed illegal, fraudulent, and deceptive conduct. *See Milkovich*, 497 U.S. at 21. Based on

their content, and context described below, Defendants' statements were "sufficiently factual to

be susceptible of being proved true or false." *Id.*

**2.    The Context Of The Defamatory Statements Was Factual**

Beyond words, the overall context confirms that Defendants' purported "accurate and

reliable" statements were presented as grounded in fact. By calling themselves "Culper Research"

and using an image of an American patriot, Defendants promoted themselves as a source to be

trusted for valuable and helpful information, much like the Culper Ring did for General George

Washington during the American Revolutionary War.[4]   The Report—a professional-looking

"Investigative Investment Research" document—presents 19 pages of purported investigative

findings, with links to graphs, pictures, charts, and an appendix, reflecting a factual reliability of

the Report. Again, its introductory "Disclaimer" actually represents that the Report contains

accurate and reliable information:

> To the best of our ability and belief, **all information contained herein is accurate and
> reliable**, and has been obtained from public sources we believe to be accurate and reliable,
> and who are not insiders or connected persons of the securities covered herein or who may
> otherwise owe any fiduciary duty or duty of confidentiality to the issuer.

Report at 1 (emphasis added). Rather than editorial commentary, the Report would appear to an

ordinary reader to be well researched and thoroughly documented, conveying factual information.

And others, in fact, relied and acted on the Report. Financial analysts published negative "investor

alerts" about LifeMD, while lawyers published "class action notices" and then filed class lawsuits

---

[4]    *See* https://en.wikipedia.org/wiki/Culper_Ring (describing the American spy ring).

against the company.  *E.g.,* Compl. at ¶38.  The media reported on the "serious accusations" of fraud and illegal activities, and warned against investing in LifeMD.  *Id*. at ¶¶ 39, 82.  In short, the defamatory statements were received with the seriousness that Defendants wanted them to receive.

## B.    Defendants' Statements Were Not Protected Opinion

By both content and context, the defamatory statements were presented as factual statements that could be proven true or false:  Plaintiffs either did or did not engage in fraud, lie, cover-up, commit crimes or illegal acts, deal in unfair insider transactions, or deceive consumers. *See* Compl. ¶ 40.  Defendants offer two arguments to contend otherwise, giving little regard to the defamatory *per se* nature of their statements.

First, Defendants contend that their statements are protected opinion because the Report disclosed Defendants as short-sellers, contained cautionary language, and was published on an internet blog.  *See* Mot. to Dismiss at 9-11.  However, Defendants' disclosed short-seller position does not turn their statements into opinion.  Nor does their use of cautionary language like "as is" and "without warranty of any kind."  Defendants' cases do not hold to the contrary.

Courts have consistently held that prefatory disclaimers and "exculpatory words" cannot "save the statements [at] issue from being defamatory."  *ZAGG, Inc. v. Catanach*, 2012 WL 4462813, at *3 (E.D. Pa. Sept. 27, 2012) (citing *Milkovich*, 497 U.S. at 18).  Indeed, "[i]t would undermine the law of defamation if speakers or authors could simply employ a talismanic word formula to absolve themselves of slander or libel."  *Id.* (citing *Milkovich*, 497 U.S. at 18-19). Nor does language like "we think," "we believe," or "in our view" transform statements into protected opinion.  "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'"  *Milkovich*, 497 U.S. at 18-19 (quotations and citations omitted).  "[T]he statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a

liar.'" *Eros Int'l. PLC v. Mangrove Partners*, 2019 WL 1129196, at *8 (N.Y. Sup. Mar. 8, 2019)

(quoting *Milkovich*, 497 U.S. at 19). *See Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 689 (N.D. Tex. 2008) ("The disclaimer that 'This is my private information and opinion' does not transform the statements into opinions.").

That the Report was published on the internet, or "Culper's personal investment analysis blog" (Mot. to Dismiss at 11), also does not turn Defendants' purported "accurate and reliable" statements into opinion.[5]  By Defendants' logic, no defamation could take place online, which is not the law. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 280-91, 285, n.18 (S.D.N.Y. 2016) (denying motion to dismiss claims arising from defamatory *per se* statements made in online web forums and "anchored in fact"); *Simoni v. Swan*, 2019 WL 5485209, at *5 (Cal. Ct. App. Oct. 25, 2019) ("the mere fact that a statement appears on a review website and uses fiery rhetoric does not establish, as a matter of law, the statement is nonactionable opinion").

Defendants' selective reliance on New York case law also does not help their argument. Those cases do not make short-sellers immune from defamation liability.  *See Eros*, 2019 WL 1129196, at *11 n.7 ("The foregoing should not be read to suggest that a 'short and distort' scheme can *never* give rise to a viable claim of defamation simply because the alleged distortion is cloaked in the form of an opinion.") (emphasis in original).  The cases simply hold, based on their facts, that plaintiff had not stated a claim under New York law. *Cf. generally Farmland Partners Inc. v. Fortunae*, 2021 WL 1978739 (D. Colo. 2021) (denying summary judgment with respect to defamation and other claims against investment blog defendants); *Overstock.com, Inc.*

---

[5]     Unlike a personal blog, the Report was published without attribution on Defendants' professional-looking website with legal disclaimers, terms of service, copyright protection, and a "Contact Us" submission form.  *See* https://culperresearch.com/.

*v. Gradient Analytics, Inc*., 151 Cal. App. 4th 688 (Cal. App. 1 Dist. 2007) (sustaining defamation and other claims against investor research and short seller hedge fund defendants).

Nor are the facts in those New York cases analogous.  The alleged defamatory statements in those cases were published in an opinion context.  They appeared in op-ed or comment sections of news articles.  *See Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295-96 (E.D.N.Y. 2015) (decided on summary judgment); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012); *Brian v. Richardson*, 87 N.Y.2d 46, 48, 52-53 (1995).  Or they were "posted on online forums that generally traffic in sharing financial opinions."  *Eros*, 2019 WL 1129196, at *8.  Or they contained express statements of opinion or extreme rhetorical and hyperbolic language.  *See Eros*, *supra* at *10 ("0% investment advice, 100% personal opinions"); *Egiazaryan*, *supra* at 507 ("epithets, fiery rhetoric, [and] hyperbole" which further highlighted nonactionable opinion); *Sabratek Corp. v. Keyser*, 2000 WL 423529, at *1, *6 (S.D.N.Y. Apr. 19, 2000) ("that guy . . . is a fraud," "this guy . . . is a dirty liar," and "the biggest pathological liar in the world"); *Brian*, *supra* at 53 (statements were "rife with rumor, speculation and seemingly tenuous inferences" which served as "clues" to the reader that the article "was something less than serious, objective reportage").

Second, Defendants contend that their statements are protected as "pure" opinion because Defendants purportedly disclosed supporting factual material.  *See* Mot. to Dismiss at 11-17 (relying on *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)).  But the rule upon which Defendants rely, which says that "[a] 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based" (*see id*.), does not apply unless an opinion is first made.  And as stated above, the defamatory statements are statements of fact, not opinion.  In fact, they are defamatory *per se* statements that regularly survive dismissal.  *E.g. Tiversa Holding Corp. v. LabMD, Inc.*, 2014 WL 1584211, at *6 (W.D. Pa. 2014) (statements

"that Plaintiffs were secretly stealing files from otherwise uncompromised private networks to illegally force private entities to purchase unnecessary services in return for not being reported to federal authorities"); *Wilson v. American General Finance Inc.*, 807 F. Supp. 2d 291, 298 (W.D. Pa. 2011) (statements "imputing unworthiness of credit"); *Joseph*, 959 A.2d at 337-38 (statements regarding money laundering, drugs, prostitution, guns); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 284 (S.D.N.Y. 2016) (statements accusing plaintiff of "engaged in a deliberate and fraudulent scam in which it is peddling a product which is the precise opposite of what it purports to be").[6]

Moreover, the "pure" opinion rule also does not apply unless all the supporting factual materials are disclosed and none are incorrect or have been misinterpreted. "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18-19. This is what Defendants did. Where they disclosed factual materials in the Report, the materials were incomplete, erroneously assessed, and meant for one thing: to give a false aura of reliability to Defendants' purported "accurate and reliable" statements that LifeMD, Schreiber, and Galluppi have perpetrated fraud, lies, cover-ups, potential crimes and illegal acts, insider dealing, and abusive, unfair, and deceptive business practices.

Defendants disclosed no factual materials showing that LifeMD, Schreiber, and Galluppi committed or covered up fraud at Redwood Scientific and have since committed or covered up fraud at LifeMD. Yet Defendants represented that Plaintiffs were "intimately involved" in a "wide ranging" and "material" fraud at both companies that they have hidden from investors. *See, e.g.,*

---

[6]     Moreover, "it is unnecessary that every word and assertion in [a] disputed [publication] is false or defamatory … [a]s long as a publication contains at least some assertions of objective fact that, if proven false, could form the predication for a maintainable libel action." *Enigma Software*, 194 F. Supp. 3d at 286, n.19 (internal quotations omitted) (citing *Gross*, *supra*).

Compl., ¶ 33.a/Report at 3 ("We are highly concerned that LifeMD executives have not disclosed their involvement in material fraud, namely in Redwood Scientific …."). Defendants similarly disclosed no factual materials showing a wide-spread use of or "felonious acts" surrounding unlicensed doctors or "insider" transactions, but nonetheless made those implications. *See, e.g.,* Compl. ¶ 33.d/Report at 10 ("Apart from the Company's apparent use of unlicensed doctors to dispense pills, we think LifeMD's current business practices mirror the same ones which landed Redwood in hot water."); Compl. ¶ 33.c/Report at 15 ("Stock awards aside, insiders have enriched themselves via related-party transactions.").

In all events, the inferences must weigh in Plaintiffs' favor and Plaintiffs have stated well-pled defamation claims. *See Livingston v. Murray*, 417 Pa. Super. 202, 208 (1992) (citations omitted); *Pelagatti v. Cohen*, 536 A.2d 1337, 1345 (Pa. Super. Ct. 1987); *Davis v. Boeheim,* 24 N.Y.3d 262, 268 (2014) ("If upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action."). *See also Tiversa Holding Corp.*, 2014 WL 1584211, at *5 ("where a plausible defamatory interpretation of a statement co-exists with a plausible non-defamatory interpretation, the issue must be resolved by a jury") (citing Restatement (Second) of Torts, § 566, comment (c)).

### III.     LifeMD, Schreiber, And Galluppi Need Not, But Did, Plead Actual Malice

Defendants argue that LifeMD, Schreiber, and Galluppi are "public figures" and therefore needed to but failed to plead actual malice. *See* Mot. to Dismiss at 17-18. Defendants' argument is misplaced for at least two reasons. First, LifeMD, Schreiber, and Galluppi are not "public figures" required to plead actual malice. But second, they adequately pled actual malice.

### A.     Plaintiffs Are Not Public Figures Required To Plead Actual Malice

In an effort to argue LifeMD, Schreiber, and Galluppi are public figures and therefore must plead actual malice, Defendants disregard the requirements of Rule 12(b)(6) motions practice and

improperly go outside the pleadings, with cites to third-party websites, earnings call transcripts, and YouTube videos. *See* Mot. to Dismiss at 17 n.13. The Court can and should reject Defendants' argument for this reason alone. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

Regardless, LifeMD, Schreiber, and Galluppi are not public figures, limited or otherwise, required to plead actual malice. The fact that LifeMD is publicly traded or that Schreiber and Galluppi publicly supported the company does not make them public figures under defamation law. Rather, the inquiry is whether the defamation plaintiff is a well-known "household" name whose statements and interests are followed with "great interest"—known as a general-purpose public figure—or the plaintiff is in a category of persons that has "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved"— known as a limited-purpose public figure. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (limited purpose public figure); *American Future Sys., Inc. v. BBB of E. Pa.,* 923 A.2d 389, 401 (Pa. 2007) ("a limited purpose public figure . . . is an individual who 'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'") (quoting *Gertz,* 418 U.S. at 351); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 289-90 (S.D.N.Y. 2016) (plaintiff not a limited-purpose public figure in absence of "identifiable public controversy") (citing cases).

Here, nothing in the Complaint, or for that matter Defendants' procedurally improper references, supports that LifeMD, Schreiber, and Galluppi hold "household" general-purpose names or injected themselves into a public debate on a controversial issue. In the latter instance, more would be required of LifeMD, Schreiber, and Galluppi beyond having "participated in public investor earnings calls, video interviews, and press releases regarding LifeMD's finances, platform, and prospects." Mot. to Dismiss at 17, n.13. Further, true controversial issues for public

figure status require some "real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum v. Fairchild Publ'g, Inc.,* 627 F.2d 1287, 1296 (D.C. Cir. 1980). *See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 938-39 (3d Cir. 1990) ("We believe a corporation must do more than the claimants have done here [*i.e.*, access to media and comparative advertising] to become a limited purpose public figure under *Gertz.*"). These circumstances are not present here.

Defendants cannot establish that LifeMD, Schreiber, and Galluppi are public figures. They also are not. The inquiry is not appropriate at this stage in any event. *See Tiversa Holding Corp.*, 2014 WL 1584211, at *7 (reserving judgment on public figure status prior to discovery).

## B.   Plaintiffs Pled Actual Malice

Nevertheless, LifeMD, Schreiber, and Galluppi sufficiently pled actual malice. To wit, they alleged that Defendants knew their defamatory statements were false or recklessly disregarded their truth. *See, e.g.*, Compl. ¶¶ 103, 116. *See also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 692-93 (1989).

LifeMD, Schreiber, and Galluppi also alleged circumstantial evidence of actual malice. Defendants published an anonymous Report on an anonymous website in an effort to avoid public scrutiny and liability. Compl. ¶¶ 22-25, 30. Defendants have a history of posting false and fraudulent reports about other companies as part of short-and-distort schemes. *Id.* ¶¶ 26-27. Defendants failed to check readily available public records, including the docket and filings in *FTC v. Cardiff, et al.*, 5:18-cv-02104 (C.D. Cal. 2018), that would have shown LifeMD, Schreiber, and Galluppi were not involved or implicated in any alleged fraud or misconduct. *Id.* ¶¶ 47-48, 61, 66, 104. Defendants intended to cause harm and were motivated by profit. *Id.* ¶¶ 1-2, 90-91, 95-97. Defendants sought to publicize the defamatory statements as widely as possible on the

internet and for free.  *Id.* ¶ 92.  They did so without confirming the contents of the Report, and even published a follow-on false and defamatory second report a month later.  *Id.* ¶¶ 105-109.  Defendants have continued to publish both reports online.  *Id.* ¶ 110.

These allegations are more than sufficient to show actual malice.  *See Herbert v. Lando*, 441 U.S. 153, 160, 164 n.12 (1979); *Palin v. New York Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019); *Shadle v. Nexstar Broad. Grp., Inc.,* 2014 WL 3590003, at *9 (M.D. Pa. July 21, 2014); *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 906 (Pa. 2007).  And this makes sense at the pleading stage because it is rare that a defendant will have already admitted making a knowingly false statement.  *See Herbert*, 441 U.S. at 170.

## IV.   LifeMD, Schreiber, And Galluppi Need Not, But Did, Plead Special Damages

Defendants argue that LifeMD, Schreiber, and Galluppi failed to plead special damages and that this is fatal to their claims.  *See* Mot. to Dismiss at 18-19.  Defendants are wrong.

First, Defendants are wrong because LifeMD, Schreiber, and Galluppi have alleged defamation *per se*—accusations of crimes and other charges impugning the integrity of one's business, profession, or trade, which obviates the need to show special damages under Puerto Rico, California, Delaware, Pennsylvania, and New York defamation law.[7]  *See, e.g., Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 716 (D.P.R. 1996) (1st Cir. 1997) (applying Puerto Rico law) (no proof of reputational damages needed other than publication of writing to another when statements are libel *per se*); *Celle v. Filipino Rep. Enterprises Inc.,* 209 F.3d 163,

---

[7]    In Pennsylvania, special damages are not a prerequisite for recovery at all, regardless of defamation *per se* allegations.  *See Joseph v. Scranton Times L.P.*, 129 A.3d 404, 429 n.10 (Pa. 2015) ("[c]onsistent with Restatement (Second) of Torts § 569, Pennsylvania case law holds that proof of special harm, *i.e.* monetary damages, is not a prerequisite to recovery in a defamation libel matter") (citing *Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. 2011)); *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 472-74 (Pa. 1984) ("a plaintiff in libel in Pennsylvania need not prove special damages or harm in order to recover; he may recover for any injury done his reputation and for any other injury of which the libel is the legal cause.").

179 (2d Cir. 2000) (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)) (under New York law, defamatory *per se* statements are actionable without pleading and proof of special damages); *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 290 n.22 (same and thus avoiding whether special damages adequately pled); *Spence v. Funk*, 396 A.2d 967, 970-71 (Del. 1978) (same for slander *per se* or libel); *Contento v. Mitchell*, 28 Cal. App. 3d 356, 359, (1972).

Second, Defendants are wrong because LifeMD, Schreiber, and Galluppi did in fact plead special damages.  As explained in the Complaint, Defendants' defamatory statements caused an immediate 24% drop in LifeMD's share price, severely diminishing LifeMD's value and the economic interests of Schreiber and Galluppi as shareholders.  Compl. ¶¶ 75-78.  As explained in the Complaint, Defendants' defamatory statements caused LifeMD to suffer expense in defending against class action lawsuits that parroted Defendants' defamatory statements.  *Id.* ¶¶ 79, 84-85. As explained in the Complaint, Defendants' defamatory statements caused LifeMD to lose potential investors (including loans and investment in excess of $40M), as well as recruiting opportunities (including software developers and other company personnel).  *Id.* ¶ 83.  These allegations are more than sufficient to show special damages.  *See Matherson v. Marchello*, 100 A.D.2d 233, 235 (N.Y. 2d Dep't 1984) ("special damages" consist of the loss of anything having economic or pecuniary value "which must flow directly from the injury to reputation caused by the defamation[.]").

Defendants' no special damages argument is actually quite audacious since the entire purpose behind Defendants' "short and distort" scheme was to inflict and then profit from economic harm on LifeMD.  Defendants are also well aware that they succeeded.  While Defendants may want to contend now that LifeMD's share price rose or fell for other reasons, any dispute over the fact or extent of damage caused by Defendants should be reserved for summary judgment or trial.  *See Joseph,* 129 A.3d at 429 (whether defamation plaintiff has proven causation

- 19 -

is "normally a question of fact"); *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 328 (Pa. Super. 2015) ("The determination of damages is a factual question to be decided by the fact-finder.").

## V.   The Complaint States Well-Pled Non-Defamation Claims

In less than two pages, using a series of single-spaced bullets, Defendants argue that Plaintiffs' non-defamation claims should be dismissed.  *See* Mot. to Dismiss at 19-20.  Defendants provide next to no legal analysis about those claims, simply arguing:  the other claims fail because the defamation claim fails; the trade libel claim fails because opinions were expressed and no malice was shown; and the false light, deceptive trade practices, unfair competition, and conspiracy claims fail because New York law governs.  *Id.*  Because Defendants have not meaningfully addressed these claims and for all the reasons discussed above, Defendants' motion to dismiss these claims should be denied.

## CONCLUSION

Defendants published a defamatory *per se* hit piece as part of their well-orchestrated "short-and-distort" scheme.  With the unequivocal representation that "**all information contained herein is accurate and reliable**," Defendants falsely stated that LifeMD, Schreiber, and Galluppi had perpetrated fraud, lies, cover-ups, potential crimes and illegal acts, insider dealing, and deceptive business practices.  Defendants made these statements maliciously to impugn the reputations of LifeMD, Schreiber, and Galluppi and to cause an artificial drop in LifeMD's share price, prompting damage to economic interests, class action lawsuits, and lost opportunities with investors, vendors, business partners, and prospective employees.  Plaintiffs' defamation and other claims are well pled, and Defendants' motion to dismiss should be denied.

Respectfully submitted this 3rd day of November, 2021.

**LIFEMD, INC., JUSTIN SCHREIBER, and STEFAN GALLUPPI**
By Counsel


**GORDON REES SCULLY MANSUKHANI, LLP**

By:  _/s/ Jessica G. Lucas_____
    S. Manoj Jegasothy (PA ID No. 80084)
    Jessica G. Lucas (PA ID No. 311280)
    707 Grant Street, Suite 3800
    Pittsburgh, PA  15219
    Tel:  (412) 577-7400
    Fax: (412) 347-5461
    mjegasothy@grsm.com
    jlucas@grsm.com
    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of November, 2021, I filed a true and correct copy of the foregoing document via the Court's CM/ECF electronic filing system, which then caused the same to be served upon all parties and attorneys of record.

 */s/ Jessica G. Lucas*
Jessica G. Lucas, Esq.

1235768/62837493v.1